IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JESSE JARED PRINDEL, | § | |
| BOP Register No. 56510-177, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:20-cv-764-K-BN |
| | § | |
| WARDEN ZOOK, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Petitioner Jesse Jared Prindel, a federal prisoner at a facility in this district at the time, filed a *pro se* 28 U.S.C. § 2241 habeas petition challenging the BOP's denial of his request for a sentencing credit for the period of time that commenced in August 2018, after Texas authorities released him on parole to the community – instead of releasing him to federal authorities to continue serving his concurrent federal sentences – and ended in May 2019, when he was arrested by the United States Marshal pursuant to an arrest warrant from this Court. *See* Dkt. Nos. 3 & 4.

United States District Judge Ed Kinkeade referred this case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

The government filed a response to the habeas petition, arguing that Prindel is not entitled to the credit that he seeks. *See* Dkt. Nos. 10-14. Prindel replied. *See* Dkt. No. 16. And the undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny the habeas petition.

Prindel does not dispute the applicable factual background set out in the response. *See id.* at 1. Those facts are:

> On June 14, 2017, Prindel was arrested by Greenville, Texas, authorities for Possession of Marijuana and Unlawful Possession of a Firearm by a Felon. [Dkt. Nos. 11 & 12 (App.)] p. 1, ¶ 3. Additionally, he was arrested on a probation violation warrant. *Id.* On October 18, 2017, Prindel was sentenced in the Hunt County Court, Grenville, Texas, case to a 120 day term of imprisonment. App. p. 14. On October 24, 2017, Prindel was indicted in the Northern District of Texas for Possession of a Firearm by a Prohibited Person and Possession with Intent to Distribute a Controlled Substance. App. pp. 39-40. An arrest warrant was issued on this same day. *Id.* On November 17, 2017, while in state custody, Prindel was temporarily transferred to the custody of the United States Marshals Service pursuant to a writ of habeas corpus *ad prosequendum*. App. p. 46.
>
> On December 20, 2017, Hunt County dismissed the charges of Unlawful Possession of a Firearm by a felon. App. p. 25. On May 2, 2018, Prindel was sentenced in the Northern District of Texas to a 60 month term of imprisonment. The Court ordered, "Pursuant to United States Sentencing Commission, Guidelines Manuel § 5G1.3, it is the Court's intent for the defendant to receive a sentence adjustment to account for any time that the defendant spent in custody beginning on June 14, 2017, that the Bureau of Prisons will not credit under Title 18 U.S.C. §3585(b). The Court wishes to adjust the defendant's federal sentence so it is fully concurrent with his state sentences." App. p. 50. On May 9, 2018, Prindel was returned to state authorities in Hunt County, Texas. App. p. 46. A detainer was filed by the United States Marshals Service with the State of Texas. App. p. 57. On January 18, 2017, Prindel was sentenced in Hunt County to a 5 year term of imprisonment, sentence suspended to 5 years probation. App. p. [3, ¶ 9.] His probation was revoked and he entered state custody on May 30, 2017, with credit for 395 days of prior custody. [*Id.*]
>
> On August 9, 2018, Prindel was inadvertently released from state custody to the community, rather to federal officials pursuant to the federal detainer. App. p. 59. On September 25, 2018, the state parole division issued a warrant for Prindel for violating the conditions of his parole. App. p. App. p. [3, ¶ 11.] On May 9, 2019, the Northern District of Texas issued an arrest warrant for Prindel. App. p. 61. Prindel was arrested on May 13, 2019, by United States Marshals and taken into exclusive federal custody. App. p. 46.

Dkt. No. 10 at 1-6 (cleaned up).

Against this accepted background, Prindel argues that "he is entitled to receive credit for the time he spent at liberty because the imprisoning sovereign[, the United States,] erred in seeking to enforce the terms of his federal sentence...." Dkt. No. 4 at 2. He primarily relies on *Leggett v. Fleming*, 380 F.3d 232 (5th Cir. 2004), and *Vega v. United States*, 493 F.3d 310 (3d Cir. 2007).

Both addressed whether a prisoner "should receive credit toward his federal sentence for the [time] he spent at liberty as a result of his erroneous release from" state custody where he should have been turned over to federal authorities. *Vega*, 493 F.3d at 314; *Semien v. United States*, 746 F. App'x 303, 306-07 (5th Cir. 2018) (per curiam) ("*Leggett* addressed a prisoner's argument that he was entitled to sentence credit after he was erroneously released from Texas state prison because his federal detainer did not travel with him when he was moved between facilities." (citing *Leggett*, 380 F.3d at 233-34)).

In *Vega*, the United States Court of Appeals for the Third Circuit first set out the origin of the "the 'rule' or the 'doctrine' of credit for time at liberty." 493 F.3d at 315 (footnote omitted):

> The origin of the rule in federal case law can be traced to *White v. Pearlman*, 42 F.2d 788 (10th Cir. 1930). In that case, the Tenth Circuit established that "where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, [ ] his sentence continues to run while he is at liberty." *Id.* at 789. However, the court noted that "[a]s to whether a prisoner, who knows a mistake is being made and says nothing, is at fault, we do not now consider." *Id.*
> While courts vary in their interpretation and application of the rule, most agree that a mere delay in the commencement of a sentence is insufficient to give a prisoner the right to credit for time at liberty. Most recently, in *Leggett v. Fleming*, 380 F.3d 232 (5th Cir. 2004), the

> Fifth Circuit reiterated that "we have also held that a delay in the commencement of a sentence by itself does not constitute service of that sentence." *Id.* at 234; *but see Smith v. Swope*, 91 F.2d 260, 262 (9th Cir. 1937) ("The prisoner is entitled to serve his time promptly if such is the judgment imposed, and he must be deemed to be serving it from the date he is ordered to serve it and is in the custody of the marshal under the commitment, if, without his fault, the marshal neglects to place him in the proper custody.").
>
> Courts adopting the rule also seem to generally agree upon the "power of the government to recommit a prisoner who is released or discharged by mistake, where his sentence would not have expired if he had remained in confinement." *White*, 42 F.2d at 789; *see also Green v. Christiansen*, 732 F.2d 1397, 1399 (9th Cir. 1984) ("A ministerial mistake does not necessarily excuse Green from serving the rest of his sentence."). In other words, a mistaken release does not prevent a government from reincarcerating a prisoner who has time to serve. The question is whether he should be given credit against his sentence for the time he was at liberty…..

*Id.* at 315-16 (footnotes omitted).

In *Leggett*, the United States Court of Appeals for the Fifth Circuit answered this question by holding that, "[w]here there is no evidence that the governmental authority seeking to enforce the prisoner's sentence has erred, a prisoner should not be allowed to avoid service of that sentence." 380 F.3d at 235-36; *see also Vega*, 493 F.3d at 320 ("We join our colleagues on the Fifth Circuit in holding that the imprisoning sovereign must be negligent."); *id.* at 321 ("We are persuaded by the reasoning of the Fifth Circuit and Judge Fernandez's dissent [in *Clark v. Floyd*, 80 F.3d 371 (9th Cir. 1996)]. Because the rule of credit for time at liberty serves policy goals that encourage fairness to the defendant, responsibility and restraint on the part of the officials executing the sentence, and service of the time owed to society, we choose not to formulate a rule that does not encourage one of those goals. Were we to allow a prisoner credit for time spent at liberty where no fault lies with the

imprisoning authority, the goal of fairness to the defendant would be served at the expense of society's expectation that a prisoner will serve the time he owes.").

While the record here reflects, first, that the BOP lodged a detainer on May 9, 2018, *see* Dkt. No. 11 at 33, and, two, that Texas mistakenly released Prindel, Prindel advances three arguments to also pin Texas's mistake on the BOP: (1) the BOP "fail[ed] to follow up on whether TDCJ receive[d] notice of the detainer lodged against him"; (2) the BOP "fail[ed] to follow up on whether TDCJ would comply with the request in the detainer"; and (3) the BOP "delay[ed] execution of his federal sentence once TDCJ notified the USMS that he was being released from state prison." Dkt. No. 4 at 6. Given the detainer lodged here, the Court need not accept these arguments.

But, even if the Court did, these arguments measured against the accepted record do not show that the United States waived its interest in Prindel's return to custody or that it acted "'so affirmatively wrong' [or] 'so grossly negligent that it would be unequivocally inconsistent with "fundamental principles of liberty and justice" to require' [Prindel] to serve his sentence now." *Semien*, 746 F. App'x at 308 (quoting *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973)). Prindel has therefore not shown that he is entitled to a sentencing credit based on his arguments that the BOP contributed to Texas's error.

> As the Fifth Circuit further explained in *Semien*,
>
> [t]his court's decisions in *Shields v. Beto*[, 370 F.2d 1003 (5th Cir. 1967),] and *Piper v. Estelle*, 485 F.2d 245 (5th Cir. 1973) provide the framework to analyze Semien's [and Prindel's] claim[s]. This court held in *Shields* that Texas waived jurisdiction to enforce Shields's sentence because Texas "showed no interest in the return of the prisoner, either by agreement between the sovereigns, by detainer, or any other affirmative

> action." *Shields*, 370 F.2d at 1005-06. "The lack of interest in Shields by the State of Texas ... [for] a lapse of more than 28 years, was equivalent to a pardon or commutation of his sentence and a waiver of jurisdiction." *Id.* at 1006. This court in *Piper* explained that for waiver under *Shields* "it is not sufficient to prove official conduct that merely evidences a lack of eager pursuit or even arguable lack of interest." *Piper*, 485 F.2d at 246. Rather, the prisoner must show that "the waiving state's action [was] so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in the aftermath of such action or inaction." *Id.*
>
> Neither *Shields* nor *Piper* suggest that Semien is entitled to a sentence credit for the time he spent at liberty. The five years and three months that Semien spent at liberty before the Marshals Service arrested him is a far cry from the twenty-eight years that passed before Texas attempted to enforce Shields's sentence after he was arrested in another state. Indeed, the delay in enforcing Semien's sentence is more akin to the twenty-seven-month delay in imprisonment at issue in *Scott[ v. United States*, 434 F.2d 11 (5th Cir. 1970)], which "[did] not constitute service of that sentence[," *id.*] at 23. The federal government did show interest in Semien's return; the Marshals took the affirmative action of arresting him in 2014. Furthermore, a typo on Semien's final judgment that arguably led to his erroneous release for 63 months before serving his federal sentence is neither "so affirmatively wrong" nor "so grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require" Semien to serve his sentence now. *Piper*, 485 F.2d at 246. Accordingly, Semien is not entitled to sentence credit for the government's alleged error regarding his USM number.

*Id.* at 307-08.

In sum, Prindel has not shown that he is entitled to the sentencing credit that he seeks.

## Recommendation

The Court should deny Petitioner Jesse Jared Prindel's application for a writ of habeas corpus under 28 U.S.C. § 2241.

A copy of these findings, conclusions, and recommendation shall be served on

all parties in the manner provided by law. And any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 19, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE